UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WILLIAM JOSEPH FIELDS,

    Defendant.

Case No. 17-20261
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE [128]**

---

During the 2014 Christmas holiday season, then–17-year-old William Joseph Fields participated in five armed robberies. Upon his arrest, Fields immediately admitted his wrongdoing and accepted responsibility. He pled guilty to one count of conspiracy to interfere with commerce by robbery, four counts of interference with commerce by robbery, and one count of aiding and abetting the use of a firearm during and in relation to a crime of violence. (ECF No. 47.) He received a below guidelines range sentence of 168 months' imprisonment (ECF No. 71) due to a number of mitigating factors. Fields now raises these same mitigating factors as reasons for compassionate release. But as the government rightly points out, "compassionate release can only be based on circumstances and developments that arise *after* sentencing, not facts that existed at the time of a defendant's original sentencing." (ECF No. 138, PageID.1081.) While "[t]he Court is mindful that no amount of time is insignificant for defendants serving sentences of imprisonment . . . compassionate

release is not a sentencing 'do-over.'" *United States v. Dickerson*, No. 09-10096, 2021 WL 674008, at *5 (C.D. Ill. Feb. 22, 2021).

Because Fields has failed to establish any extraordinary and compelling circumstances entitling him to relief, his motion for compassionate release (ECF No. 128) must be DENIED.

## I.

In the winter of 2014–2015, William Joseph Fields was just a teenager when he participated in numerous armed robberies in Detroit, Michigan, with co-defendants Carlos Harper (then 34 years old) and Roxanne McGlade (Harper's wife, who drove Fields and Harper to several of the robberies). On December 14, 2014, Harper and Fields robbed, at gunpoint, a victim walking down the street. (ECF No. 138, PageID.1081.) The next day, they robbed a pizza delivery driver, again at gunpoint. (ECF No. 47, PageID.230.) A few days later, on December 18, 2014, they robbed a Dollar Plus store and threatened workers with a firearm. (*Id.* at PageID.231.) On Christmas Eve, they robbed the West Fort Street Bar. (*Id.*) During this robbery, Harper discharged his firearm, shooting and seriously injuring two female patrons. (*Id.*) Finally, on January 9, 2015, Harper and Fields robbed a nail salon. (*Id.*) Harper again discharged his firearm, this time near a customer and her child. (*Id.* at PageID.231–232.) Fields knew prior to each robbery that Harper would have a firearm to threaten and intimidate the victims. (*Id.* at PageID.232.)

The Defendants were ultimately arrested and all three pled guilty. (ECF Nos. 41, 46, 47.) Fields agreed to be prosecuted as an adult and pled to conspiracy, several

substantive Hobbs Act robbery counts, and one count of discharging a firearm during and in relation to a crime of violence. (ECF No. 47.) His guidelines range was 228–255 months, which included 108–135 months on the robbery counts and 120 months, mandatory and consecutive on the § 924(c) firearm count. (ECF No. 137, PageID.1041 (Sealed).)

Prior to being sentenced, Fields advised the Court, through his sentencing memorandum and defense allocution, that he and his family were threatened by the older, dangerous, and violent Harper. (ECF Nos. 63, 137 (Sealed).) That through fear and intimidation, Harper coerced him to participate in the robberies, for which he received not a penny. (*Id*.) That at only 17 years old, he was especially vulnerable to Harper's influence given his difficult upbringing, including substantial parental neglect. (*Id*.) That once he was free from Harper, he returned to his previous law-abiding life. (*Id*.) And that once arrested, he immediately admitted his involvement and expressed extreme remorse. (*Id*.) The government also conveyed its belief that Fields could be rehabilitated. (ECF No. 137, PageID.1051.)

The now-retired sentencing judge, Robert H. Cleland, considered the information presented and, in his always careful and meticulous way, thoroughly evaluated the sentencing factors in 18 U.S.C. § 3553(a). (ECF No. 137.) He balanced the "horrific," "terrorizing" activity that Fields participated in against Fields' personal circumstances. (*Id*. at PageID.1052–1056.) In the end, he imposed a below-guidelines-range sentence of 48 months on the robbery counts and the 120-month consecutive mandatory minimum on the § 924(c) count for a total of 168 months (14

years). The more culpable Harper received a sentence of 655 months (ECF No. 55) and the less involved McGlade a sentence of 84 months (ECF No. 68).

Fields has served more than eight years of his sentence. His rehabilitation is going well. He has stayed out of trouble, maintained consistent prison employment, earned his GED, and engaged in some programming. (ECF No. 140, PageID.1108–1109.) His projected release date is October 27, 2028. (ECF No. 140-5.) He recently filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) asking this Court to "reduce his sentence to time served and impose an appropriate term of supervised release." (ECF No. 128, PageID.1000.) The government opposed the motion (ECF No. 138), and the Court appointed counsel (ECF Nos. 130, 131) to assist Fields with his reply brief (ECF No. 140).

The facts are undisputed and the law in this Circuit is well established. "[D]istrict courts may not rely on facts that existed at the time of sentencing when determining whether extraordinary and compelling grounds for release presently are shown." *United States v. Wright*, No. 17-20328, 2024 U.S. Dist. LEXIS 60609, at *12 (E.D. Mich. Apr. 2, 2024). This is the beginning and end of Fields' motion. Thus, no further argument is needed. *See* E.D. Mich. LR 7.1(f).

## II.

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to this rule is compassionate release. The First Step Act of 2018 allows the Court to reduce a defendant's sentence if it finds, after a defendant has exhausted his administrative remedies or 30 days

after the warden receives a request for compassionate release, that "extraordinary and compelling reasons" warrant a reduction; that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and that the sentencing factors under 18 U.S.C. § 3553(a), to the extent they apply, support a reduction. 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission amended its policy statement in U.S.S.G. § 1B1.13 to cover compassionate release motions filed directly by defendants (as well as those brought by the Director of the Bureau of Prisons). It remains the case, though, that without an "extraordinary and compelling" reason, the district court may not grant compassionate release. *See United States v. Hunter*, 12 F.4th 555, 572 (6th Cir. 2021).

## A.

The First Step Act's exhaustion requirement is mandatory. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). The government does not dispute that Fields' unsuccessful effort to seek compassionate release from the warden satisfies this requirement. (ECF No. 138, PageID.1090 ("According to records from the Bureau of Prisons, Fields requested compassionate release from prison officials in April, 2025, which was denied by the warden. Fields has therefore exhausted his administrative remedies.").)

## B.

Congress assigned to the Sentencing Commission "the task of describing what could be considered extraordinary and compelling reasons for sentence reduction." *United States v. Bricker*, 135 F.4th 427, 433 (6th Cir. 2025) (citing 28 U.S.C. § 994(t)).

The Sentencing Commission obliged through its policy statement, U.S.S.G § 1B1.13, which was amended in November 2023 to modify and add categories. *See* U.S.S.G. § 1B1.13(b); *see also United States v. Washington*, 122 F.4th 264, 267 (6th Cir. 2024). Those categories include a defendant's medical conditions, (old) age, family circumstances, experience of abuse in prison, and any other circumstances that are "similar in gravity." U.S.S.G. § 1B1.13(b)(1)–(5). While rehabilitation alone does not qualify, 28 U.S.C. § 994(t), it "may be considered in combination with other circumstances in determining whether and to what extent a reduction . . . is warranted," U.S.S.G. § 1B1.13(d).

1.

To establish extraordinary and compelling circumstances, Fields relies primarily on the catchall provision, § 1B1.13(b)(5), covering other reasons "similar in gravity" to those listed in the policy statement. (ECF No. 140, PageID.1104.) He explains that he "presents extraordinary and compelling reasons essentially as encompassing his youth at the time of the offense (and undue influence of an older and more culpable co-defendant), his troubled upbringing, co-defendant sentencing disparity and his rehabilitation while incarcerated." (*Id.* at PageID.1105; *see also* ECF No. 128, PageID.989–990.) The government likewise identifies, as Fields' reasons for compassionate release, "his young age at the time of the crimes, the alleged coercion by Harper, his cooperation with law enforcement, the sentencing disparity with McGlade, and his neglect as a child." (ECF No. 138, PageID.1091.)

6

These are the same facts that Fields also relied on at sentencing. (ECF No. 67; ECF No. 137, PageID.1052–1054.)

The problem he now faces is that the purpose of the compassionate release statute "was to give courts a means to shorten sentences that had been rendered unjust by *post*-sentencing developments." *United States v. Logan*, 532 F. Supp. 3d 725, 731 (D. Minn. 2021) (emphasis in original). Indeed, the Sixth Circuit has made clear that "defendants seeking compassionate release must show that their post-sentencing 'personal circumstances' have 'changed so that the district court should weigh the § 3553(a) factors differently than it had at the original sentencing.'" *United States v. Hunter*, 12 F.4th 555, 570 (6th Cir. 2021) (quoting *United States v. Navarro*, 986 F.3d 668, 672 (6th Cir. 2021)). "Therefore, facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *Id.* Stated simply, "a defendant cannot repackage factors from his sentencing and call them extraordinary and compelling. Instead, extraordinary and compelling reasons focus 'on post-sentencing factual developments.'" *United States v. Parks*, No. 24-5566, 2025 WL 1069308, at *2 (6th Cir. Apr. 9, 2025) (citation omitted); *see also United States v. Edmond*, No. 22-1443, 2023 WL 3736880, at *2 (6th Cir. May 31, 2023) ("[P]utting aside the truth of Edmond's contentions that his role in the offense was minor and his criminal history was insignificant, such facts—along with his 'work history' and 'strong family support'—already existed at the time of sentencing and thus cannot be considered extraordinary and compelling reasons to reduce his sentence."); *United States v. Culp*, No. 22-1166, 2023 U.S. App. LEXIS

7

25174, at *7 (6th Cir. Sept. 20, 2023) ("Culp's 'age when he committed the murder and his co-defendants' sentences . . . were impermissible factual considerations because those facts existed at sentencing.'" (omission in original)); *United States v. Jackson*, No. 06-20411, 2023 WL 5321073, at *4 (E.D. Mich. Aug. 17, 2023) ("[T]he Sixth Circuit has made clear that facts known at sentencing, including age, cannot later be used to support a motion under 18 U.S.C. § 3582(c)(1)(A).").

Fields has not asserted any such post-sentencing factual developments. He therefore recognizes the obstacle presented by this law. (ECF No. 140, PageID.1105–1107.) He seeks to surmount it with § 1B1.13(e). (*Id.*) In that provision, the Sentencing Commission states that "[f]or purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." § 1B1.13(e).

Fields' effort falls short. This provision "simply clarifies that an extraordinary and compelling reason 'need not have been unforeseen at the time of sentencing.'" *Parks*, 2025 U.S. App. LEXIS 8525, at *6. "It does not change the conclusion in [*Hunter*] that a Defendant cannot recycle evidence from sentencing to create an 'extraordinary and compelling' reason." *United States v. Davis*, No. 10-21, 2025 U.S. Dist. LEXIS 153679, at *7 n.2 (N.D. Ohio Aug. 8, 2025) (citing *Parks*, 2025 U.S. App, LEXIS 8525, at *5–6). Indeed, the Sentencing Commission does not have the

authority to overrule Sixth Circuit precedent when promulgating its policy statement for compassionate release. *See, e.g., United States v. Bricker*, 135 F.4th 427, 437 (6th Cir. 2025); *see also United States v. Brown*, No. 16-118, 2024 WL 1848011, at *4 (W.D. Mich. Apr. 29, 2024) (finding that § 1B1.13(e) is in conflict with *Hunter* and holding that "*Hunter* must control . . . unless or until the Court of Appeals revisits its decision"); *United States v. Lee*, 18-20198, 2024 WL 1508826, at *6 (E.D. Mich. Apr. 5, 2024) (similar).

Additionally, Fields' youth, vulnerability, coercion by Harper, and cooperation with authorities were not simply foreseeable or anticipated at the time of sentencing. They were known and considered at sentencing. *See Brown*, 2024 WL 1848011, at *4 ("[Defendant] is not actually asking this Court to accept arguments that *could* have been considered by the sentencing judge. He's asking the Court to receive arguments that *were* in fact considered by the sentencing judge and come out with a different sentence. This is not an extraordinary or compelling reason for compassionate release." (emphasis in original)). It is not the province of compassionate release to reconsider the mitigating circumstances presented during sentencing and impose a different sentence. *See United States v. Majors*, No. 09-00047, 2021 WL 2809112, at *3 (M.D. Tenn. July 6, 2021) ("[A] § 3582 motion is not an avenue for a prisoner to seek 'a "do-over" of his sentencing.'"); *United States v. Mathis*, 10-00019, 2022 U.S. Dist. LEXIS 225590, at *20 (W.D. Pa. Dec. 13, 2022) (explaining that a "redo" of sentencing "is not the purpose of a sentence reduction under § 3582, which is instead

fundamentally intended to consider and grant relief for 'extraordinary and compelling' circumstances that arise during the imposed custodial sentence").

This is especially true where, as here, the judge deciding the compassionate release motion is not the sentencing judge. As one court sensibly explained:

> Revisiting old sentencing decisions is also bad policy, especially when the judge considering the § 3582(c)(1)(A)(i) motion is not the judge who originally sentenced the defendant. Appellate courts give a great deal of deference to the sentencing decisions of trial judges for a reason: Trial judges know far more about the defendant and about the case than can ever appear on a cold record. Here, for example, Judge Rosenbaum had presided over this case for 14 months—including a 12-day jury trial—by the time that he sentenced Logan. When Judge Rosenbaum decided on Logan's sentence, Judge Rosenbaum knew far more about Logan, his co-defendants, his crimes, and his victims than the undersigned will ever learn—and far more than could ever be conveyed through briefs and a written record. This Court will generally be loathe to use a § 3582(c)(1)(A) motion to substitute its judgment for the judgment of a sentencing judge. Similarly, this Court will generally be loathe to use a § 3582(c)(1)(A) motion to revisit a sentencing decision that the Court itself made years ago, when the matter was fresh in its mind.

*Logan*, 532 F. Supp. 3d at 732–33 (citations omitted).

In sum, the circumstances that led to Fields' involvement in the underlying offenses, while sympathetic, were considered at his sentencing and, under Sixth Circuit precedent, do not permit compassionate release.

**2.**

That leaves Fields' rehabilitation. There is no dispute that Fields has maintained a clean disciplinary record and consistent employment in prison. (ECF Nos. 140-3, 140-4.) He earned his GED and continues to participate in programming. (ECF No. 140-5.) He is at a low-risk recidivism level and has a solid release plan that includes support from his partner. (ECF No. 128, PageID.994; ECF No. 140,

10

PageID.1108–1109.) The Court admires the positive steps Fields has taken while incarcerated; however, "Congress has instructed that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason' for compassionate release." *United States v. West*, 70 F.4th 341, 348 (6th Cir. 2023) (alteration in original) (citing 28 U.S.C. § 994(t)). And while commendable, "good conduct and rehabilitation in prison are 'expected from all inmates.'" *United States v. Johnson*, No. 11-20767, 2025 U.S. Dist. LEXIS 138835, at *9 (E.D. Mich. July 21, 2025) (collecting cases). So this level of rehabilitation does not rise to the level of extraordinary and compelling. *See United States v. Smith*, 614 F. Supp. 3d 538, 545 (E.D. Mich. 2022) (denying compassionate release in part because, while "Defendant has taken advantage of the BOP's correctional programs while incarcerated . . . [and] is commended for his efforts . . . there is no indication . . . that Defendant's rehabilitation has been unusually extensive or compelling"); *Jackson*, 2023 WL 5321073, at *4 ("Defendant has done well in custody, he claims. He has completed a fair number of programs, worked consistently, and even apparently become a published author. However, this progress is ultimately only that which was expected of him. Improvement of self and change in former attitudes, while admirable, do not alone provide a basis for a finding of *extraordinary* behavior." (emphasis in original)).

It is true, as Fields points out, that rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." § 1B1.13(d). But the Court has already found that these other circumstances cannot be considered

11

extraordinary and compelling. And "[a] combination of 'insufficient factual considerations does not entitle a defendant to a sentence reduction.'" *Parks*, 2025 WL 1069308, at \*2 (quoting *United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021)).

In sum, Fields lacks an extraordinary and compelling circumstance warranting a sentence reduction. This forecloses relief under § 3582(c)(1)(A) without the need to address the § 3553(a) factors. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) (explaining that if any one of the "prerequisites . . . is lacking," the district court "do[es] not need to address the others").[1]

### III.

For these reasons, Fields' motion for compassionate release (ECF No. 128) is DENIED.

IT IS SO ORDERED.

Dated: November 13, 2026

> s/Laurie J. Michelson
> LAURIE J. MICHELSON
> United States District Judge

---

[1] Thus, the Court does not need to consider any alleged sentence disparity between Fields and McGlade under § 3553(a)(6). And even if it did, "'[t]he instruction in § 3553(a)(6) to avoid unwarranted sentence disparities 'is not concerned with disparities between one individual's sentence and another individual's sentence,' but rather national disparities." *United States v. Clisby*, No. 25-3095, 2025 U.S. App. LEXIS 28828, at \*7–8 (6th Cir. Nov. 3, 2025) (quoting *United States v. Tellez*, 86 F.4th 1148, 1155 (6th Cir. 2023)). Nor has Fields established any unwarranted sentencing disparity with McGlade. As Judge Cleland explained at McGlade's sentencing, he sought to impose on her "an appropriate sentence which is firm" but "certainly not the kind of sentence that Mr. Harper or Mr. Fields would be due." (ECF No. 90, PageID.545). McGlade, continued Judge Cleland, "participated knowingly and intentionally, of course, but at a lesser level, providing transportation and encouragement." (*Id.*) Thus, Judge Cleland believed that McGlade was simply "not responsible at a level or to a degree that the others are." (*Id.*)